

March 29, 2023

Molly C. Dwyer, Clerk
U.S. Court of Appeals for the Ninth Circuit
Via CM/ECF

Re:  22-35612, *Doug Smith, et al v. Anne Helzer, et al*
      Federal Rule Appellate Procedure 28(j) Letter

Dear Ms. Dwyer:

Appellants write to explain the application of *No on E v. Chiu*, No. 22-15824 (9th Cir. March 8, 2023), which upheld San Francisco's mandatory secondary donor disclaimer ordinance.

First, the Court affirms that a preliminary injunction appeal is not dismissed simply because an election passes. Op. at 14-16. Rather, as Appellants argued in their supplemental brief, the proper test is to ask whether the law remains on the books and whether the appellants will engage in similar activity in future elections. *Id.* Here, as in *No on E*, the answer to both is yes, as best evidenced by the "demonstrated history" of the Appellants engaging in this activity in the past and their credible intention to engage in future elections. *Id.* at 15 & 16.

As to the merits, *No on E* makes no holding relevant to the double-disclosure challenge brought on behalf of individual donors who have to file duplicative reports within 24 hours. Nor does *No on E* make any holding relevant to the scarlet letter attached to out-of-state groups by the disclaimer requirement, where *Thompson v. Hebdon* still governs. And *No on E* does not decide the on-ad disclaimer provision as a compelled speech claim, which is the claim Appellants make in this case.

In all events, the appellant in *No on E* are seeking en banc review.

Respectfully Submitted,

/s/ Daniel R. Suhr
Daniel R. Suhr
*Counsel of Record*
Liberty Justice Center
440 N. Wells St., Suite 200
Chicago, Illinois 60654
312-263-7668
dsuhr@libertyjusticecenter.org

cc: all counsel of record



Exhibit A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| NO ON E, SAN FRANCISCANS OPPOSING THE AFFORDABLE HOUSING PRODUCTION ACT; EDWIN M LEE ASIAN PACIFIC DEMOCRATIC CLUB PAC SPONSORED BY NEIGHBORS FOR A BETTER SAN FRANCISCO ADVOCACY; TODD DAVID, | No. 22-15824<br><br>D.C. No. 3:22-cv-02785-CRB |
| *Plaintiffs-Appellants,* | |
| v. | OPINION |
| DAVID CHIU, in his official capacity as San Francisco City Attorney; SAN FRANCISCO ETHICS COMMISSION; BROOKE JENKINS, in his official capacity as San Francisco District Attorney; CITY AND COUNTY OF SAN FRANCISCO, | |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted December 9, 2022
San Francisco, California

Filed March 8, 2023

Before: Susan P. Graber, Ronald M. Gould, and Paul J.
Watford, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's denial of
Plaintiffs' motion for a preliminary injunction seeking to
enjoin enforcement of a San Francisco ordinance requiring
that "all committees making expenditures which support or
oppose any candidate for City elective office or any City
measure" must comply with the City's new disclaimer
requirements, in addition to California's requirements." S.F.
Campaign & Governmental Conduct Code § 1.161(a).

Under California law, certain political advertisements
run by a committee must name the committee's top
contributors. After the passage of Proposition F, referred to
by proponents as the "Sunlight on Dark Money Initiative,"
the City and County of San Francisco added a secondary-

_____

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

contributor disclaimer requirement that compels certain committees, in their political advertisements, also to list the major donors to those top contributors. Plaintiffs, who supported the passage of a ballot measure in the June 7, 2022 election, alleged that the secondary-contributor disclaimer requirement violated the First Amendment, both on its face and as applied against Plaintiffs.

The panel first determined that even though the June 2022 election had occurred, this appeal was not moot because the controversy was capable of repetition yet evading review.

The panel held that Plaintiffs had not shown a likelihood of success on the merits. Applying exacting scrutiny, the panel held that San Francisco's requirement was substantially related to the governmental interest in informing voters of the source of funding for election-related communications. As this court previously recognized, providing information to the electorate may require looking beyond the named organization that runs an advertisement. In the context of San Francisco municipal elections, Defendants showed that donors to local committees are often committees themselves and that committees often obscure their actual donors through misleading and even deceptive committee names. Because the interest in learning the source of funding for a political advertisement extends past the entity that is directly responsible, the challenged ordinance was substantially related to the governmental interest in informing the electorate.

The panel next held that the ordinance did not create an excessive burden on Plaintiffs' First Amendment rights relative to the government interest and was sufficiently

tailored. Thus, the panel was not persuaded that the secondary-contributor requirement was an impermissible burden on speech because the size of the disclaimer was excessive with respect to larger ads. And given Defendants' position that it would not enforce the challenged ordinance with respect to shorter ads, the district court was within its discretion to conclude that any burden on speech did not require a preliminary injunction in this instance. Plaintiffs' argument that the secondary-contributor requirement violated their right to freedom of association was likewise insufficient to outweigh the strength of the governmental interests. The district court was within its discretion to conclude that the secondary-contributor requirement had a scope in proportion to the City's objective.

Addressing the remaining preliminary injunction factors, the panel concluded that without an injunction, Plaintiffs likely would be injured by the loss of some First Amendment freedoms, but that injury would be modest. Defendants, however, established that there is a strong public interest in providing voters with the information of who supports ballot measures. Thus, the public interest and the balance of hardships weighed in favor of Defendants.

## COUNSEL

Alan Gura (argued), Institute for Free Speech, Washington, D.C.; James R. Sutton, The Sutton Law Firm, San Francisco, California; for Plaintiffs-Appellants.

Tara M. Steeley (argued) and Wayne K. Snodgrass, Deputy City Attorneys; David Chiu, City Attorney; Office of the San Francisco City Attorney; San Francisco, California; for Defendants-Appellees.

Tara Malloy and Megan P. McAllen, Campaign Legal Center, Washington, D.C., for Amicus Curiae Campaign Legal Center.

## OPINION

GRABER, Circuit Judge:

In response to the growing prevalence of money in politics, many governments have required groups that run political advertisements to identify their funding sources publicly. Under California law, certain political advertisements run by a committee must name the committee's top contributors. The City and County of San Francisco adds a secondary-contributor disclaimer requirement that compels certain committees, in their political advertisements, also to list the major donors to those top contributors. [1]

---

[1] The parties in this case distinguish between "disclaimers" (statements at the time of the advertisement, identifying who is funding the ad) and "disclosures" (public reports filed with government entities). Although that distinction is recognized in the case law, see, e.g., Citizens United

Plaintiffs—a political committee that runs ads, the committee's treasurer, and a contributor to the committee—seek to enjoin enforcement of San Francisco's ordinance. They allege that the secondary-contributor requirement violates the First Amendment. The district court held that Plaintiffs are unlikely to succeed on the merits and denied Plaintiffs' request for a preliminary injunction. Reviewing the denial of a preliminary injunction for abuse of discretion and the underlying legal principles de novo, Fyock v. Sunnyvale, 779 F.3d 991, 995 (9th Cir. 2015), we agree with the district court. Plaintiffs have not shown a likelihood of success on the merits. San Francisco's requirement is substantially related to the governmental interest in informing voters of the source of funding for election-related communications. The ordinance does not create an excessive burden on Plaintiffs' First Amendment rights relative to that interest, and it is sufficiently tailored to the governmental interest. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A.　　California Political Reform Act

The California Political Reform Act defines a "committee" as "any person or combination of persons" who, in a calendar year, receives contributions totaling \$2,000 or more; makes independent expenditures totaling \$1,000 or more; or makes contributions totaling \$10,000 or more to, or at the behest of, candidates or committees. Cal. Gov't Code § 82013. A "primarily formed committee" is

---

v. FEC, 558 U.S. 310, 366–67 (2010), some courts use the terms interchangeably. Where relevant, we clarify whether laws considered by prior courts required disclosures or disclaimers, consistent with the foregoing definitions.

defined as a committee that receives $2,000 or more in contributions in a calendar year and is formed or exists primarily to support or oppose a single candidate, a single measure, a group of candidates being voted on in the same election, or two or more measures being voted on in the same election. Id. § 82047.5. Every committee, whether or not it is primarily formed, must file a statement of organization with the California Secretary of State and the relevant local filing officer, id. § 84101(a), which in this case is the San Francisco Ethics Commission.    See S.F. Campaign & Governmental Conduct Code ("S.F. Code") § 1.112(a)(1).

Committees must file semiannual statements, Cal. Gov't Code § 84200(a), and must file two preelection statements, one at least 40 days before an election and the second at least 12 days before an election, id. §§ 84200.5, 84200.8.  Among other requirements, each of those campaign statements must include "[t]he total amount of contributions received during the period covered by the campaign statement and the total cumulative amount of contributions received."    Id. § 84211(a).    If any donor contributes money to the committee during a reporting period and has given aggregate contributions of $100 or more, then the report must include that donor's name, address, occupation, and employer, plus the dates and amounts of the donor's contributions during the period and the donor's total aggregate contributions. Id. § 84211(f).

California law also requires specific disclaimers in political advertisements.    Id. §§ 84501–84511.    An "advertisement" is defined as "any general or public communication that is authorized and paid for by a committee for the purpose of supporting or opposing a candidate or candidates for elective office or a ballot measure or ballot measures."    Id.    § 84501(a)(1).

Advertisements must include the words "[a]d paid for by [the name of the committee]." Id. § 84502(a)(1). They also must state "committee major funding from," followed by the names of the top contributors to the committee. Id. § 84503(a). "Top contributors" are defined as "the persons from whom the committee paying for an advertisement has received its three highest cumulative contributions of fifty thousand dollars ($50,000) or more." Id. § 84501(c)(1). Depending on the medium, the advertisement must follow certain formatting requirements. See id. §§ 84504.1 (video); 84504.2 (print); 84504.4 (radio and telephone); 84504.3 (electronic media); 84504.6 (online platforms).

B.     San Francisco's Proposition F

On November 5, 2019, San Francisco voters passed Proposition F. Referred to by proponents as the "Sunlight on Dark Money Initiative," Proposition F changed the disclaimer requirements for advertisements paid for by independent political committees, among other provisions. After the passage of Proposition F, "all committees making expenditures which support or oppose any candidate for City elective office or any City measure" must comply with the City's new disclaimer requirements, in addition to the state's requirements. S.F. Code § 1.161(a).

Under the new ordinance, ads run by primarily formed independent expenditure and ballot measure committees must include a disclaimer listing their top three contributors of $5,000 or more. Id. § 1.161(a)(1). Additionally, "[i]f any of the top three major contributors is a committee, the disclaimer must also disclose both the name of and the dollar amount contributed by each of the top two major contributors of $5,000 or more to that committee." Id. The ad also must inform voters that "[f]inancial disclosures are

available at sfethics.org" or, if an audio ad, provide a substantially similar statement that specifies the website. S.F. Code § 1.161(a)(2).

Printed disclaimers that identify a "major contributor or secondary major contributor" must list the dollar amount of relevant contributions made by each named contributor. S.F. Code § 1.161(a)(1); S.F. Ethics Comm'n Reg. ("S.F. Reg.") 1.161-3(a)(4). Print ads must include the disclaimers in text that is "at least 14-point, bold font." S.F. Code § 1.161(a)(3). Audio and video advertisements must begin by speaking the required disclaimers of major contributors and secondary major contributors, but need not disclose the dollar amounts of those donors' contributions. Id. §§ 1.161(a)(5); 1.162(a)(3). In addition, video ads must display a text banner that contains similar information to that required in print ads. Cal. Gov't Code § 84504.1; S.F. Code § 1.161(a)(1).

Violations of the City's campaign finance laws are punishable by civil, criminal, and administrative penalties. S.F. Code § 1.170. A committee's treasurer may be held personally liable for violations by the committee. Id. § 1.170(g). Any individual who suspects a possible violation may file a complaint with the Ethics Commission, City Attorney, or District Attorney. Id. § 1.168(a); see id. § 1.168(b) (providing for enforcement through civil action); San Francisco Charter, appendix C, § C3.699-13 (Ethics Commission procedures for investigations and enforcement proceedings).

C.     Earlier Litigation Challenging Proposition F

In 2020, Todd David founded Yes on Prop B, Committee in Support of the Earthquake Safety and Emergency

Response Bond.[2] David and Yes on Prop B challenged San Francisco's secondary-contributor requirement in the lead-up to the March 3, 2020 election. On February 20, 2020, the district court enjoined the application of that requirement to the plaintiffs' smaller and shorter advertisements "because they [left] effectively no room for pro-earthquake safety messaging." Yes on Prop B v. City & County of San Francisco, 440 F. Supp. 3d 1049, 1051, 1062 (N.D. Cal. 2020). The district court, however, concluded that the challenged ordinance was "not an unconstitutional burden on larger or longer advertising" and declined to enjoin the secondary-contributor disclaimer requirement on its face or as applied to the plaintiffs' larger ads. Id. at 1051, 1061–62.

On October 21, 2020, in an unpublished disposition, we dismissed the plaintiffs' appeal on the ground of mootness. Yes on Prop B v. City & County of San Francisco, 826 F. App'x 648 (9th Cir. 2020). The plaintiffs argued that the "capable of repetition, yet evading review exception" applied, but we held that the case was moot because the plaintiffs had not "shown that 'there is a reasonable expectation that the same complaining party will be subject to the same action again.'" Id. at 649 (quoting Protectmarriage.com–Yes on 8 v. Bowen, 752 F.3d 827, 836 (9th Cir. 2014)). We stressed that the record was "devoid of any detail" that plaintiffs would run advertisements in the future, particularly in the upcoming November 2020 election. Id. Thus, we concluded that, "[a]t best, [the plaintiffs] have shown only that there is a theoretical

---

[2] The Prop B at issue in the 2020 litigation concerned an earthquake safety and emergency response bond and is unrelated to the Prop B that was originally at issue in this litigation.

possibility that the same controversy will recur with respect to them." Id.

D.    Current Litigation

This action was brought by three plaintiffs: (1) No on E, San Franciscans Opposing the Affordable Housing Production Act ("the Committee"), a primarily formed independent expenditure committee that runs ads subject to the secondary-contributor requirement;[3] (2) Todd David, the founder and treasurer of No on E (and the founder of Yes on Prop B); and (3) Edwin M. Lee Asian Pacific Democratic Club PAC Sponsored by Neighbors for a Better San Francisco Advocacy ("Ed Lee Dems"), a committee and a direct contributor to No on E, whose major donors would be subject to disclosure in ads under the San Francisco ordinance. David established the Committee to support the passage of Prop B in the June 7, 2022 election. The Committee sought to communicate its message by publishing mailers, print ads in newspapers, and digital ads on the internet.

As of May 10, 2022, the Committee had raised a total of $15,000 from three donors, each of which contributed $5,000. Two of those donors were committees that, in turn, had donors that had made contributions of more than $5,000. Thus, according to the examples provided by Plaintiffs, San Francisco's ordinance would require the following

---

[3] The lead plaintiff in this suit was known as "San Franciscans Supporting Prop B" throughout the district court litigation. On appeal, and after the conclusion of the June 7, 2022 election, the case caption was updated to reflect the fact that the Committee rededicated itself to opposing Proposition E and changed its name, as required by California Government Code section 84107.

disclaimer on the Committee's print and video advertisements:

Ad paid for by San Franciscans Supporting Prop. B 2022. Committee major funding from:

1. Concerned Parents Supporting the Recall of Collins, Lopez and Moliga ($5,000) – contributors include Neighbors for a Better San Francisco Advocacy Committee ($468,800), Arthur Rock ($350,000).

2. BOMA SF Ballot Issues PAC ($5,000).

3. Edwin M. Lee Asian Pacific Democratic Club PAC sponsored by Neighbors for a Better San Francisco Advocacy ($5,000) – contributors include Neighbors for a Better San Francisco Advocacy Committee ($100,000), David Chiu for Assembly 2022 ($10,600).

Financial disclosures are available at sfethics.org.

On May 11, 2022, Plaintiffs filed this action. Plaintiffs allege that the secondary-contributor disclaimer requirement violates the First Amendment, both on its face and as applied against Plaintiffs. In their prayer for relief, Plaintiffs request a declaration that the requirement violates the First Amendment, on its face and as applied to Plaintiffs; an injunction barring enforcement of the secondary-contributor requirement, in general and against Plaintiffs specifically; and nominal damages.

On May 12, 2022, Plaintiffs filed a motion for a preliminary injunction. Plaintiffs submitted a proposed order requesting that the court "preliminarily [enjoin]

Defendants and their agents, officers, and representatives from enforcing against Plaintiffs the on-communication disclosure requirements for secondary donors at S.F. Code § 1.161(a)."  In support of the motion for a preliminary injunction, David submitted a declaration stating that, "[b]ecause Concerned Parents and Ed Lee Dems are committees, they have contributed $5,000 to the Committee, and they both have donors who have given them $5,000 or more, San Francisco's law will require that our Committee report those secondary donors on our communications."

On June 1, 2022, the district court denied Plaintiffs' motion.  Plaintiffs timely appeal.  We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292.

## DISCUSSION

To obtain a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008).  On appeal, Plaintiffs argue primarily that they have demonstrated a likelihood of success on the merits. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("The first factor under Winter is the most important—likely success on the merits.").  Below, we address (A) mootness, (B) Plaintiffs' likelihood of success on the merits, and (C) the remaining Winter factors.

### A.    Mootness

Before turning to the merits, we first must establish that we have jurisdiction.  "[A] federal court loses its jurisdiction to reach the merits of a claim when the court can no longer

effectively remedy a present controversy between the parties." Protectmarriage.com—Yes on 8, 752 F.3d at 836. Defendants maintain that, because the June 2022 election has occurred, Plaintiffs can no longer receive meaningful relief and this appeal is moot. Although the June 2022 election has passed, this appeal is not moot because this controversy is "capable of repetition, yet evading review." FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007).

The "capable of repetition, yet evading review" exception to mootness applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Id. (citation and internal quotation marks omitted). Defendants do not dispute that Plaintiffs have satisfied the first prong of that test. See Protectmarriage.com—Yes on 8, 752 F.3d at 836 (describing an election as a controversy of inherently limited duration).

"The second prong of the capable of repetition exception requires a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party." Wis. Right to Life, 551 U.S. at 463 (citation and internal quotation marks omitted). But that standard does not require Plaintiffs to establish a certainty that they will be subject to the same enforcement: "Requiring repetition of every 'legally relevant' characteristic of an as-applied challenge—down to the last detail—would effectively overrule this statement by making this exception unavailable for virtually all as-applied challenges." Id. Plaintiffs bear the burden of showing that the "capable of repetition" prong is satisfied. Lee v. Schmidt-Wenzel, 766 F.2d 1387, 1390 (9th Cir. 1985).

On this record, Plaintiffs have met that burden with respect to at least one plaintiff. [4] David has a demonstrated history of establishing committees that run advertisements that are subject to the secondary-contributor requirement, and he has twice engaged in litigation on this same issue. He also has clearly expressed his intent to continue those activities, unlike the plaintiffs in the earlier suit. Plaintiffs' complaint alleges that David "will engage in materially and substantially similar activity in the future, establishing committees and using them to speak about San Francisco candidates and measures." (Emphasis added). In support of Plaintiffs' motion for a preliminary injunction, David averred that he "will continue to create primarily formed committees in future elections, to share ads and communications substantially and materially similar to those we wanted to share in 2020 and that we want to share now." (Emphasis added).

Defendants offer no persuasive reason to doubt David's affidavit, which is supported by his past practice. See Wis. Right to Life, 551 U.S. at 463–64 (holding that there was a reasonable expectation that the same controversy would recur where plaintiff "credibly claimed that it planned on running 'materially similar' future targeted broadcast ads" and "sought another preliminary injunction based on an ad it planned to run" during another blackout period). Accordingly, this appeal is not moot, because it falls within the exception for controversies that are "capable of

---

[4] Although Plaintiffs' motion for a preliminary injunction did not include a facial challenge, the relief sought by Plaintiffs was not limited to the June 2022 election. Instead, Plaintiffs asked the court to preliminarily enjoin Defendants from enforcing the secondary-contributor requirement against Plaintiffs indefinitely.

repetition, yet evading review." See Hum. Life of Wash. Inc. v. Brumsickle, 624 F.3d 990, 1001–02 (9th Cir. 2010) (concluding that there was a reasonable expectation that the controversy would recur because the plaintiff was a politically active organization that had been heavily involved in public debates in the past and intended to undertake future communications); Porter v. Jones, 319 F.3d 483, 490 (9th Cir. 2003) (rejecting mootness argument because plaintiff had expressed intent to create a similar website in future elections); Baldwin v. Redwood City, 540 F.2d 1360, 1365 (9th Cir. 1976) (holding that an issue is "capable of repetition, yet evading review" where the record established that plaintiff had continuing interest in and past practices of participating in local political campaigns by creating signs).

### B. Likelihood of Success on the Merits

Plaintiffs seek a preliminary injunction on the ground that the secondary-contributor disclaimer requirement violates the First Amendment. We hold that the district court acted within its discretion to conclude that Plaintiffs did not establish a likelihood of success on the merits.

The district court applied "exacting scrutiny," which "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Citizens United v. FEC, 558 U.S. 310, 366–67 (2010) (quoting Buckley v. Valeo, 424 U.S. 1, 64 (1976) (per curiam)). On de novo review, Fyock, 779 F.3d at 995, we hold that exacting scrutiny is the correct legal standard.

Regardless of the beliefs sought to be advanced by association, "compelled disclosure requirements are reviewed under exacting scrutiny." Ams. for Prosperity Found. v. Bonta, 141 S. Ct. 2373, 2383 (2021) (opinion of

Roberts, C.J.); see also id. at 2396 (applying exacting scrutiny to First Amendment challenge to compelled disclosure) (Sotomayor, J., dissenting). In the electoral context, both the Supreme Court and our court have consistently applied exacting scrutiny to compelled disclosure requirements and on-advertisement disclaimer requirements. See Citizens United, 558 U.S. at 366–67 (holding that disclaimer and disclosure requirements are subject to exacting scrutiny); John Doe No. 1 v. Reed, 561 U.S. 186, 196 (2010) (applying exacting scrutiny to disclosure requirement); Buckley, 424 U.S. at 64 (requiring that compelled disclosure requirements survive exacting scrutiny); Davis v. FEC, 554 U.S. 724, 744 (2008) (evaluating whether disclosure requirements satisfy exacting scrutiny); Brumsickle, 624 F.3d at 1005 (applying exacting scrutiny to Washington law that required disclaimers on political advertising and disclosure of certain contributions and expenditures); see also Family PAC v. McKenna, 685 F.3d 800, 805–06 (9th Cir. 2012) ("Disclosure requirements are subject to exacting scrutiny.").[5]

Plaintiffs' argument to the contrary is unavailing. Plaintiffs take the position that disclaimer and disclosure are "terms of art," and argue that the City's ordinance should be reviewed under strict scrutiny because it is a "hybrid disclaimer/disclosure requirement." But Plaintiffs cite no

---

[5] In ACLU of Nevada v. Heller, 378 F.3d 979 (9th Cir. 2004), we held that strict scrutiny applied to statutes that affect the content of election communications. 378 F.3d at 987. But we have since acknowledged that intervening Supreme Court decisions clarified that we apply exacting scrutiny to disclosure and disclaimer requirements. See Brumsickle, 624 F.3d at 1005 (citing John Doe No. 1, 561 U.S. at 196, and Citizens United, 558 U.S. at 366–67).

authority that makes a similar distinction.[6]  Indeed, they acknowledge that the Supreme Court has applied exacting scrutiny to <u>both</u> disclosure rules, <u>John Doe No. 1</u>, 561 U.S. at 196, <u>and</u> disclaimer requirements, <u>Citizens United</u>, 558 U.S. at 366–67.

The concerns that Plaintiffs suggest are uniquely implicated in this case animate the entirety of the exacting scrutiny standard: "This type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct in requiring disclosure." <u>Buckley</u>, 424 U.S. at 65.  Courts have upheld other laws, even where there was some deterrent effect, because "[d]isclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities,' <u>Buckley</u>, 424 U.S., at 64, and 'do not prevent anyone from speaking,' <u>McConnell v. FEC</u>, 540 U.S. 93, 201 (2003)." <u>Citizens United</u>, 558 U.S. at 366 (citations altered).  Any argument that the secondary-contributor requirement violates the First Amendment because of the length and

---

[6] Citing <u>Americans for Prosperity Foundation v. Bonta</u>, Plaintiffs further argue that San Francisco's "hybrid" requirement should be reviewed under strict scrutiny because "[t]he Supreme Court recently signaled that it may be increasing the scrutiny given to any disclosure regime."  This reading of <u>Americans for Prosperity Foundation</u> clashes with a plain reading of the case and the manner in which other courts have applied it to disclaimer laws. <u>See, e.g.</u>, <u>Gaspee Project v. Mederos</u>, 13 F.4th 79, 95 (1st Cir. 2021), <u>cert. denied</u>, 142 S. Ct. 2647 (2022); <u>Smith v. Helzer</u>, No. 3:22-CV-00077-SLG, 2022 WL 2757421, at *10 (D. Alaska July 14, 2022), <u>appeal docketed</u>, No. 22-35612 (9th Cir. argued Feb. 9, 2023). We hold that <u>Americans for Prosperity Foundation</u> does not alter the existing exacting scrutiny standard.

content of the disclaimer is appropriately addressed as part of the exacting scrutiny analysis.

To survive exacting scrutiny, a law must satisfy all three steps of the inquiry. The threshold question is whether there is a "substantial relation" between the challenged law and a "sufficiently important" governmental interest. Citizens United, 558 U.S. at 366–67 (citation and internal quotation marks omitted); see Ams. for Prosperity Found., 141 S. Ct. at 2384 (describing a substantial relation as "necessary but not sufficient"). Next, "[t]o withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." Ams. for Prosperity Found., 141 S. Ct. at 2383 (quoting John Doe No. 1, 561 U.S. at 196) (internal quotation marks omitted). Finally, "[w]hile exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." Id.

Below, we assess (1) the relation between the secondary-contributor disclaimer requirement and the governmental interest; (2) whether the strength of that interest reflects the seriousness of the burden on Plaintiffs' First Amendment rights; and (3) whether San Francisco's ordinance is narrowly tailored to that interest.

> 1. Relation Between the Secondary-Contributor Disclaimer Requirement and Defendants' Interest

Defendants take the position that the secondary-contributor requirement serves their interest in providing information to voters about the source of election-related spending. A committee can circumvent California's on-

advertisement disclaimer requirement and avoid including its top donors in a disclaimer by providing funding to another committee instead of running an advertisement directly. Defendants contend that the secondary-contributor requirement satisfies voters' need for additional information by making it more difficult to hide the sources of funding for political advertisements.

Courts have long recognized the governmental interest in the disclosure of the sources of campaign funding:

> [D]isclosure provides the electorate with information as to where political campaign money comes from and how it is spent by the candidate in order to aid the voters in evaluating those who seek federal office. It allows voters to place each candidate in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches. The sources of a candidate's financial support also alert the voter to the interests to which a candidate is most likely to be responsive and thus facilitate predictions of future performance in office.

Buckley, 424 U.S. at 66–67 (internal quotation marks and citation omitted); see Cal. Pro-Life Council, Inc. v. Randolph, 507 F.3d 1172, 1179 n.8 (9th Cir. 2007) ("[I]n the context of disclosure requirements, the government's interest in providing the electorate with information related to election and ballot issues is well-established."), abrogated on other grounds as stated in Brumsickle, 624 F.3d at 1013.

"[T]he people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments." First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 791 (1978). As the role of money in politics has expanded, the public is faced with a "cacophony of political communications through which . . . voters must pick out meaningful and accurate messages." Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1105 (9th Cir. 2003). Understanding what entity is funding a communication allows citizens to make informed choices in the political marketplace. Alaska Right to Life Comm. v. Miles, 441 F.3d 773, 793 (9th Cir. 2006); see Bellotti, 435 U.S. at 791–92 ("[The public] may consider, in making their judgment, the source and credibility of the advocate."); Getman, 328 F.3d at 1105 ("Given the complexity of the issues and the unwillingness of much of the electorate to independently study the propriety of individual ballot measures, we think being able to evaluate who is doing the talking is of great importance.").

We have "repeatedly recognized an important (and even compelling) informational interest in requiring ballot measure committees to disclose information about contributions." Family PAC, 685 F.3d at 806. Disclosure of who is speaking "enables the electorate to make informed decisions and give proper weight to different speakers and messages." Citizens United, 558 U.S. at 371. "An appeal to cast one's vote a particular way might prove persuasive when made or financed by one source, but the same argument might fall on deaf ears when made or financed by another." Brumsickle, 624 F.3d at 1008. Thus, we conclude that, as in other cases, Defendants have a strong governmental interest in informing voters about who funds political advertisements.

It follows that the secondary-contributor requirement is substantially related to that interest. We have previously recognized that providing information to the electorate may require looking beyond the named organization that runs the advertisement. In <u>ACLU of Nevada v. Heller</u>, 378 F.3d 979 (9th Cir. 2004), for example, the plaintiffs challenged a Nevada statute that required printed election-related communications to include the names of the businesses, social organizations, or legal entities responsible for those communications. 378 F.3d at 981–83. We recognized that "individuals and entities interested in funding election-related speech often join together in ad hoc organizations with creative but misleading names." <u>Id.</u> at 994. Thus, we concluded that, "[w]hile reporting and disclosure requirements can expose the actual contributors to such groups and thereby provide useful information concerning the interests supporting or opposing a ballot proposition or a candidate, simply supplying the name and address of the organization on the communication itself does not provide useful information—and that is all the Nevada Statute requires." <u>Id.</u>

While <u>Heller</u> is an anonymous speech case, we agree with <u>Heller</u>'s reasoning, and find it relevant to the election disclaimer context. The interests in "where political campaign money comes from," <u>Buckley</u>, 424 U.S. at 66 (citation omitted), and "in learning who supports and opposes ballot measures," <u>Family PAC</u>, 685 F.3d at 806, extend beyond just those organizations that support a measure or candidate directly. Plaintiffs do not challenge California's law that requires an on-advertisement disclaimer listing the top three donors to a committee. But those donors are often committees in their own right. The secondary-contributor requirement is designed to go beyond

the "ad hoc organizations with creative but misleading names" and instead "expose the actual contributors to such groups." Heller, 378 F.3d at 994; see McConnell v. FEC, 540 U.S. 93, 128 (2003) (noting that "sponsors of [political] ads often used misleading names to conceal their identity" and providing examples), overruled on other grounds by Citizens United, 558 U.S. at 365–66. In the context of San Francisco municipal elections, Defendants show that donors to local committees are often committees themselves and that committees often obscure their actual donors through misleading and even deceptive committee names. Because the interest in learning the source of funding for a political advertisement extends past the entity that is directly responsible, the challenged ordinance is substantially related to the governmental interest in informing the electorate.

Notwithstanding that relationship, Plaintiffs contend that the challenged ordinance actually undermines that interest. They take the position that the secondary-contributor requirement could cause confusion because a committee must list donors who may not have any position on the issue that the ad is addressing or who may not have known that their donation would be used to promote those views. But Plaintiffs provide no factual basis for their assumption that San Francisco voters are unable to distinguish between supporting a group that broadcasts a statement and supporting the statement itself. See Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 454–55 (2008) (requiring more than "sheer speculation" of voter confusion). Additionally, adopting Plaintiffs' position could call into question the logic underlying decisions that uphold disclosure and disclaimer requirements as applied to primary donors. Those cases emphasize that the laws at issue further the governmental interest in revealing the source of

campaign funding, not ensuring that every donor agrees with every aspect of the message. Brumsickle, 624 F.3d at 1005–08; Getman, 328 F.3d at 1104–07.

Plaintiffs' final argument—that any informational interest furthered by San Francisco's ordinance is outweighed by the corresponding limitation on time available for other speech—is similarly unavailing. It is well-established that "[d]isclaimer and disclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities, and do not prevent anyone from speaking." Citizens United, 558 U.S. at 366 (internal quotation marks and citations omitted). Even if Plaintiffs are correct that the governmental interest is somewhat diminished in this instance because the challenged ordinance requires disclosure of secondary contributors instead of direct donors, that principle still applies.

Thus, we hold that the district court did not abuse its discretion by concluding that the secondary-contributor disclaimer requirement is substantially related to Defendants' informational interest.

### 2. Burden On First Amendment Rights

"To withstand [exacting] scrutiny, 'the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.'" John Doe No. 1, 561 U.S. at 196 (quoting Davis, 554 U.S. at 744). It is well-established that there is an important governmental interest in providing voters with information about the source of funding for political advertisements. Buckley, 424 U.S. at 66–67; Heller, 378 F.3d at 994; Family PAC, 685 F.3d at 806. Given the strength of that interest, we are not persuaded by either of Plaintiffs' arguments that San

Francisco's ordinance impermissibly burdens their First
Amendment rights.

First, Plaintiffs assert that the required disclaimer
displaces an excessive amount of speech. According to
David, the spoken disclaimer would take up 100% of a 15-
second ad, 100% of a 30-second ad, and 53-55% of a 60-
second ad. David averred that the written disclaimer on
video ads would take up between 35% and 51% of the screen
for either 10 seconds of an ad that is 30 seconds or longer,
or the first 5 seconds of a shorter ad. Finally, David declared
that the required disclaimer would take up 100% of a two-
inch by four-inch ad, 70% of a five-inch by five-inch ad,
35% of a five-inch by ten-inch ad, and 23% of the face of an
8.5-inch by 11-inch mailer.     Defendants dispute that
disclaimers required by the ordinance would take up the
majority of the space on most committee's advertisements.
In any event, Defendants have consistently stated that they
would not enforce the disclaimer requirement where
disclaimers take up most or all of an advertisement's space.

In Citizens United, the Supreme Court upheld a law that
required 40% of an advertisement to be devoted to a
disclaimer. 558 U.S. at 320, 366, 367–68. In the earlier
litigation challenging San Francisco's ordinance, the district
court relied on that precedent and denied the plaintiffs'
request for an injunction with respect to the larger ads. Yes
on Prop B, 440 F. Supp. 3d at 1056–57. Although the court
declined to establish a mathematical formula, it concluded
that the secondary-contributor requirement was not unduly
burdensome for larger ads, in which the disclaimer took up
less than 40% of the ad. Id. The court found that, for larger
ads, the remaining space was sufficient to communicate the
plaintiffs' political message. Id. We find that reasoning to
be persuasive. Plaintiffs have not shown that they are likely

to succeed on the merits of their argument that the secondary-contributor requirement is an impermissible burden on speech because the size of the disclaimer is excessive with respect to larger ads.[7]

Shorter ads warrant a different analysis. In the earlier litigation, the district court enjoined San Francisco's ordinance with respect to smaller advertisements because the burden on speech was too great. Yes on Prop B, 440 F. Supp. 3d at 1055–56. But, in this litigation, the district court denied the entirety of Plaintiffs' motion for an injunction. Even if we assume that we agree with the district court's conclusion that the secondary-contributor requirement likely causes constitutional issues with respect to shorter ads, the district court was within its discretion to conclude that any burden on speech did not require a preliminary injunction in this instance.

In the earlier litigation, the City took the position that it would not enforce the requirement with respect to shorter

---

[7] Plaintiffs rely heavily on American Beverage Association v. City & County of San Francisco, 916 F.3d 749 (9th Cir. 2019) (en banc), to support their assertion that the size of the disclaimer is excessive here. But American Beverage is inapposite. The court in American Beverage was applying the Zauderer test, a separate inquiry that requires the defendant to prove that compelled commercial speech was neither unjustified nor unduly burdensome. Am. Bev., 916 F.3d at 756 (citing Zauderer v. Off. of Disciplinary Couns., 471 U.S. 626, 651 (1985), and Nat'l Inst. of Family & Life Advocs. v. Becerra (NIFLA), 138 S. Ct. 2361, 2372, 2377 (2018)). That test differs from exacting scrutiny review, which applies to disclaimer and disclosure requirements in the electoral context. Citizens United, 558 U.S. at 366–67; see id., 558 U.S. at 422 ("The election context is distinctive in many ways[.]" (Stevens, J., concurring)); Gaspee Project, 13 F.4th at 95 ("The election-related context implicated here is alone sufficient to distinguish NIFLA").

ads, and the district court granted an injunction to that effect. Yes on Prop B, 440 F. Supp. 3d at 1055. When Plaintiffs moved for an injunction in this action, Defendants offered to agree not to enforce San Francisco's ordinance with respect to print ads that were five-inches by five-inches or smaller, or to spoken disclaimers on digital and audio advertisements of 60 seconds or less. After Plaintiffs refused that offer, Defendants again took the position that they would not enforce the challenged ordinance with respect to shorter ads in which the "required disclaimer would consume the majority of Plaintiffs' advertisement." In light of that commitment, San Francisco's ordinance does not burden Plaintiffs such that "the intervention of a court of equity is essential in order effectually to protect . . . rights against injuries otherwise irremediable." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (citation and internal quotation marks omitted).

The second burden identified by Plaintiffs—that the secondary-contributor requirement violates their right to freedom of association and drives away potential donors—is likewise insufficient to outweigh the strength of the governmental interests. "It is undoubtedly true that public disclosure of contributions to candidates and political parties will deter some individuals who might otherwise contribute." Buckley, 424 U.S. at 68. But to support an exemption from a compelled disclosure requirement, Plaintiffs must show more than a "modest burden." Family PAC, 685 F.3d at 808; see Ams. for Prosperity Found., 141 S. Ct. at 2388–89 (concluding that petitioners had shown a "widespread burden on donors' associational rights" where there was evidence that petitioners and their supporters had been subjected to "bomb threats, protests, stalking, and

physical violence," and hundreds of organizations expressed that they shared the petitioners' concerns).

Plaintiffs provided only two declarations in support of their contention that San Francisco's ordinance burdens their right to freedom of association. David asserts that "[p]otential donors have expressed concern to me about the secondary disclosure rules and are more reluctant to contribute to committees where their donors need to be disclosed." Ed Lee Dems asserts that it would have to withdraw its donations from the Committee and would have its own fundraising challenges if donors thought that their names might become public through the secondary-contributor requirement.

The district court was within its discretion to conclude that Plaintiffs failed to demonstrate that the secondary-contributor requirement "actually and meaningfully deter[s] contributors." Family PAC, 685 F.3d at 807. Plaintiffs have not provided evidence of any specific deterrence beyond some donors' alleged desire not to have their names listed in an on-advertisement disclaimer. See Family PAC, 685 F.3d at 806–08 (concluding that disclosure requirements presented only a modest burden without a showing of a significant risk of harassment or retaliation). That level of hesitation on the part of donors is insufficient to establish that the "deterrent effect feared by [Plaintiffs] is real and pervasive." Ams. for Prosperity Found., 141 S. Ct. at 2388.

Adopting Plaintiffs' view that a modest burden on their right to associate anonymously outweighs the informational interest would "ignore[] the competing First Amendment interests of individual citizens seeking to make informed choices in the political marketplace." McConnell, 540 U.S. at 197 (quoting McConnell v. FEC, 251 F. Supp. 2d 176, 237

(D.D.C. 2003)), <u>overruled in part on other grounds by Citizens United</u>, 558 U.S. at 365–66.  The modest burden imposed on the Plaintiffs is permissible when contrasted with the alternative:  "Plaintiffs never satisfactorily answer the question of how uninhibited, robust, and wide-open speech can occur when organizations hide themselves from the scrutiny of the voting public."  <u>Id.</u> (internal quotation marks omitted).

### 3.  Narrow Tailoring

Under exacting scrutiny, "the challenged requirement must be narrowly tailored to the interest it promotes."  <u>Ams. for Prosperity Found.</u>, 141 S. Ct. at 2384.  But this standard does not require "the least restrictive means of achieving that end."  <u>Id.</u>  Despite the close fit between San Francisco's ordinance and the government's informational interest, Plaintiffs present two different arguments as to why the secondary-contributor requirement is insufficiently tailored.  Neither argument is persuasive.

First, Plaintiffs argue that the requirement fails narrow tailoring because there are other available alternatives, such as making the same information available in an online database.  That suggestion misunderstands the relevant standard.  The secondary-contributor requirement must have a scope "in proportion to the interest served," but it need not represent the "single best disposition."  <u>McCutcheon v. FEC</u>, 572 U.S. 185, 218 (2014) (plurality opinion) (internal quotation marks omitted).  Case law and scholarly research support the proposition that, because of its instant accessibility, an on-advertisement disclaimer is a more effective method of informing voters than a disclosure that voters must seek out.  <u>See</u> <u>Gaspee Project</u>, 13 F.4th at 91 (holding that an on-ad donor disclaimer is "not entirely

redundant to the donor information revealed by public disclosures" because it "provides an instantaneous heuristic by which to evaluate generic or uninformative speaker names"), cert. denied, 142 S. Ct. 2647 (2022); Majors v. Abell, 361 F.3d 349, 353 (7th Cir. 2004) (reasoning that because fewer people are likely to see reports to government agencies than notice in the ad itself, "reporting [is] a less effective method of conveying information"); Michael Kang, Campaign Disclosure in Direct Democracy, 97 Minn. L. Rev. 1700, 1718 (2013) ("Research from psychology and political science finds that people are skilled at crediting and discrediting the truth of a communication when they have knowledge about the source, but particularly when they have knowledge about the source at the time of the communication as opposed to subsequent acquisition."). Given the realities of voters' decision-making processes amidst a "cacophony" of electoral communications, Getman, 328 F.3d at 1105–06, the district court was within its discretion to conclude that the secondary-contributor requirement has a scope in proportion to the City's objective.

Plaintiffs' second argument—that the requirement is not limited to donations that are earmarked for electioneering—does not change that conclusion. Plaintiffs cite two out-of-circuit cases in which courts concluded that disclosure laws were narrowly tailored, in part because the laws applied only to donations that were earmarked for electioneering. See Indep. Inst. v. Williams, 812 F.3d 787, 797 (10th Cir. 2016) (upholding Colorado constitutional provision that only required disclosure of donors who have specifically earmarked their contributions for electioneering purposes); Indep. Inst. v. FEC, 216 F. Supp. 3d 176, 190–92 (D.D.C. 2016) (three-judge panel holding that a large-donor disclosure requirement limited to donors who contribute

$1,000 or more for the specific purpose of supporting the advertisement is tailored to advance the government's interest in informing the electorate of the source of the advertisement).**8** Those courts upheld laws that required only disclosure of earmarked contributions. But neither court suggested that, or had occasion to consider whether, a law fails narrow tailoring unless it is limited to the disclosure of earmarked contributions.

And even though San Francisco's ordinance goes beyond donations that are earmarked for electioneering, it does not have an unconstrained reach. The challenged ordinance requires an on-advertisement disclaimer listing only the top donors to a committee that is, in turn, a top donor to a primarily formed committee. S.F. Code § 1.161(a)(1). Under California law, a primarily formed committee is formed or exists primarily to support candidates or ballot measures. Cal. Gov't Code § 82047.5. By donating to a primarily formed committee, a secondary committee necessarily is making an affirmative choice to engage in election-related activity.

If a secondary committee were to purchase and run an advertisement opposing a ballot measure directly, its top

---

8 Plaintiffs also cite Van Hollen, Jr. v. FEC, 811 F.3d 486 (D.C. Cir. 2016), in which the D.C. Circuit considered a challenge to an FEC rule requiring corporations and labor organizations to disclose only donations "made for the purpose of furthering electioneering communications" instead of all donations. 811 F.3d at 488 (citation and internal quotation marks omitted). But because the court in Van Hollen did not consider whether a campaign finance law violated the First Amendment, we do not find its analysis to be persuasive. See id. at 495, 501 (holding that the FEC's rule is consistent with the text, history, and purposes of the authorizing statute and is not an arbitrary and capricious exercise of the FEC's regulatory authority).

donors could be subject to California's disclaimer requirements, which Plaintiffs do <u>not</u> challenge. The application of that law does not depend on whether the top donors earmarked their contributions for electioneering, or on whether they support the content of the advertisement. The City's ordinance does not violate narrow tailoring just because the secondary committee funneled its donations through a separate committee instead of running its own advertisements.

Additionally, even if Plaintiffs' challenge to the City's requirement were to succeed, the secondary donors still would be subject to disclosure and publicly visible on government websites. Plaintiffs do not challenge those public disclosures of secondary donors, which occur whether or not the donors earmarked their contributions. Assuming that those disclosures are permissible, as Plaintiffs do by failing to challenge their validity, we are not persuaded that a law requiring those same donors to be named in an on-advertisement disclaimer is insufficiently tailored.

Thus, we hold that the district court was within its discretion to conclude that Plaintiffs did not establish a likelihood of success on the merits.

C.        Remaining Preliminary Injunction Factors

The district court concluded that none of the remaining <u>Winter</u> factors weighed in favor of an injunction, in part because Plaintiffs' argument as to those factors largely relied on their position that they had demonstrated a likelihood of success on the merits. The same is true on appeal. We hold that the district court did not abuse its discretion by reaching that conclusion.

Without an injunction, Plaintiffs likely would be injured by the loss of some First Amendment freedoms, Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion), but that injury would be modest, Family PAC, 685 F.3d at 806. Defendants, however, have established that there is a strong public interest in providing voters with the information of who supports ballot measures. Brumsickle, 624 F.3d at 1008. Thus, the public interest and the balance of hardships weigh in favor of Defendants. See FTC v. Affordable Media, LLC, 179 F.3d 1228, 1236 (9th Cir. 1999) ("Under this Circuit's precedents, 'when a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight.'" (quoting FTC v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989))).

**AFFIRMED.**